UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY GREGORY,

       Plaintiff,

v.

PREMIUM RECEIVABLES, LLC,
PLATINUM RECOVERIES, LLC,
WORLDWIDE RECOVERIES, LLC,
PREMIUM ASSET SERVICES LLC,
ATLAS RECOVERY SERVICES LLC,
COLLECTION CONSULTING SERVICES, LLC,
PROFESSIONAL ACCOUNT RESOLUTIONS, LLC,
COAST MITIGATION & ASSOCIATES, INC.,
JAT CONSULTING, LLC,
PLATINUM HOLDINGS GROUP, LLC,
SCOTT DOUGLAS CASS, JAMES ARLEY TRENT,
DEVIN CHRISTIAN MOLINA, and DANIELLE
MARIE REVIS, also known as DANIELLE
MARIE COLLASO,

       Defendants.
_____/

COMPLAINT

## I.    Introduction

1.      This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Michigan Regulation

of Collection Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* Michigan Occupational Code

("MOC") M.C.L. § 339.901 *et seq.,* and Telephone Consumer Protection Act, 47 U.S.C. § 227 *et*

*seq.*

1

**II.    Jurisdiction**

2.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 47 U.S.C. § 227 *et seq.* (TCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367.  Venue in this judicial district is proper because the pertinent events took place here.

**III.    Parties**

3.      Plaintiff Anthony Gregory is an adult, natural person residing in Kent County, Michigan.  Mr. Gregory is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Gregory is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

4.      Defendant Premium Receivables, LLC ("Premium") is an active Nevada limited liability company. Premium uses as its Nevada business address, a private mailbox that is rented from The UPS Store #135, located at 3540 West Sahara Avenue, #E-6, PMB #1310, Las Vegas, Nevada 89102.  The registered agent for Premium is Luis Esteban Vasquez, also known as Steve Vasquez, 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The principal business address for Premium purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. Premium also has claimed to have a principal business address located at 20422 Beach Boulevard, Suite 245, Huntington Beach, California 92648. Premium uses multiple telephone numbers, including 714-969-8811 and 714-545-2122. Premium uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Premium regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Premium is a "debt collector" as the term is

2

defined and used in the FDCPA. Premium is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Premium is a "collection agency" and "licensee" as the terms are defined and used in MOC. Premium has been sued multiple times in various United States District Courts for violating the FDCPA by using the same unlawful debt collection practices that are described in this complaint.

5.      According to documents filed by Premium with the State of California, the State of Nevada, and elsewhere, the Managing Member of Premium is defendant Scott Douglas Cass.

6.      During all times pertinent hereto, Premium directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

7.      Defendant Platinum Recoveries, LLC ("Platinum") is an active Nevada limited liability company. Platinum uses as its Nevada business address, a private mailbox that is rented from The UPS Store #135, located at 3540 West Sahara Avenue, #E-6, PMB #1310, Las Vegas, Nevada 89102.  The registered agent for Platinum is Luis Esteban Vasquez, also known as Steve Vasquez, 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The principal business address for Platinum purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. Platinum also has claimed to have a principal business address located at 20422 Beach Boulevard, Suite 245, Huntington Beach, California 92648. Platinum uses multiple telephone numbers, including 714-316-2725. According to documents filed by Platinum with the State of California, the Managing Members of Platinum are defendants Scott Douglas Cass and James Arley Trent. Platinum uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Platinum

regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Platinum is a "debt collector" as the term is defined and used in the FDCPA. Platinum is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Platinum is a "collection agency" and "licensee" as the terms are defined and used in MOC.

8.      During all times pertinent hereto, Platinum directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

9.      Defendant Worldwide Recoveries, LLC ("Worldwide"), also doing business as PR Associates, is an active California limited liability company. The registered agent for Worldwide is Luis Esteban Vasquez, also known as Steve Vasquez, 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The principal business address for Worldwide purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. Worldwide also has claimed to have a principal business address located at 20422 Beach Boulevard, Suite 245, Huntington Beach, California 92648.  Worldwide uses multiple telephone numbers, including 714-557-9090 and 714-380-5875. According to documents filed by Worldwide with the State of California and elsewhere, the officers and managers of Worldwide include defendants Scott Douglas Cass, James Arley Trent and Devin Christian Molina. Worldwide uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Worldwide regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Worldwide is a "debt collector" as the term is defined and used in the FDCPA. Worldwide is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Worldwide is a "collection agency"

4

and "licensee" as the terms are defined and used in MOC.

10.     During all times pertinent hereto, Worldwide directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

11.     Defendant Premium Asset Services LLC ("PAS") is an active Nevada limited liability company. PAS uses as its Nevada business address, a private mailbox that is rented from The UPS Store #135, located at 3540 West Sahara Avenue, #E-6, PMB #1310, Las Vegas, Nevada 89102.  The registered agent for PAS is Luis Esteban Vasquez, also known as Steve Vasquez, 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The principal business address for PAS purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. PAS also has claimed to have a principal business address located at 20422 Beach Boulevard, Suite 245, Huntington Beach, California 92648.  PAS uses multiple telephone numbers, including 702-202-2323 and 714-316-2726. According to documents filed by PAS with the State of California and elsewhere, the Managing Members of PAS include defendant Scott Douglas Cass. PAS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. PAS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. PAS is a "debt collector" as the term is defined and used in the FDCPA. PAS is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, PAS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

12.     During all times pertinent hereto, PAS directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are

5

described in this complaint.

13.     Defendant Atlas Recovery Services LLC ("Atlas") is an active Nevada limited liability company. Atlas uses as its Nevada business address, a private mailbox that is rented from The UPS Store #135, located at 3540 West Sahara Avenue, #E-6, PMB #1310, Las Vegas, Nevada 89102.  The registered agent for Atlas is Luis Esteban Vasquez, also known as Steve Vasquez, 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The principal business address for Atlas purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. Atlas also has claimed to have a principal business address located at 20422 Beach Boulevard, Suite 245, Huntington Beach, California 92648.  Atlas uses multiple telephone numbers, including 714-380-5858. According to documents filed by Atlas with the State of California and elsewhere, the Managing Members of Atlas include defendants Scott Douglas Cass and James Arley Trent. Atlas uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Atlas regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Atlas is a "debt collector" as the term is defined and used in the FDCPA. Atlas is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Atlas is a "collection agency" and "licensee" as the terms are defined and used in MOC.

14.     During all times pertinent hereto, Atlas directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

15.     Defendant Collection Consulting Services, LLC ("CCS") is an active Nevada limited liability company. CCS uses as its Nevada business address, a private mailbox that is

rented from The UPS Store #135, located at 3540 West Sahara Avenue, #E-6, PMB #1310, Las Vegas, Nevada 89102.  The registered agent for CCS is Luis Esteban Vasquez, also known as Steve Vasquez, 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The principal business address for CCS purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. CCS also has claimed to have a principal business address located at 20422 Beach Boulevard, Suite 245, Huntington Beach, California 92648.  CCS uses multiple telephone numbers, including 714-845-3620. According to documents filed by CCS with the State of California and elsewhere, the Managing Members of CCS include defendants Scott Douglas Cass and James Arley Trent. CCS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. CCS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CCS is a "debt collector" as the term is defined and used in the FDCPA. CCS is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, CCS is a "collection agency" and "licensee" as the terms are defined and used in MOC.

16.     During all times pertinent hereto, CCS directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

17.     Defendant Professional Account Resolutions, LLC ("PAR") is an active Nevada limited liability company. PAR uses as its Nevada business address, a private mailbox that is rented from The UPS Store #135, located at 3540 West Sahara Avenue, #E-6, PMB #1310, Las Vegas, Nevada 89102.  The registered agent for PAR is Luis Esteban Vasquez, also known as Steve Vasquez, 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The principal

7

business address for PAR purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. PAR also has claimed to have a principal business address located at 20422 Beach Boulevard, Suite 245, Huntington Beach, California 92648. According to documents filed by PAR with the State of California and elsewhere, the Managing Members of PAR include defendant Scott Douglas Cass. PAR uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. PAR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. PAR is a "debt collector" as the term is defined and used in the FDCPA. PAR is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, PAR is a "collection agency" and "licensee" as the terms are defined and used in MOC.

18.     During all times pertinent hereto, PAR directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

19.     Defendant Coast Mitigation & Associates, Inc. ("Coast") is an active California corporation. According to information provided by Coast to the State of California, the business address for Coast is 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The registered agent for Coast is Luis Esteban Vasquez, also known as Steve Vasquez, 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The principal business address for Coast purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. According to documents filed by Coast with the State of California and elsewhere, the Managing Members of Coast include defendant Scott Douglas Cass. Coast uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.

Coast regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Coast is a "debt collector" as the term is defined and used in the FDCPA. Coast is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Coast is a "collection agency" and "licensee" as the terms are defined and used in MOC.

20.     During all times pertinent hereto, Coast directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

21.     Defendant JAT, LLC ("JAT") is an active Nevada limited liability company. JAT uses as its Nevada business address, a private mailbox that is rented from The UPS Store #135, located at 3540 West Sahara Avenue, #E-6, PMB #1310, Las Vegas, Nevada 89102. The principal business address for JAT purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. JAT also has claimed to have a principal business address located at 20422 Beach Boulevard, Suite 245, Huntington Beach, California 92648. According to documents filed by JAT with the State of Nevada, the Managing Members of JAT include defendant James Arley Trent. Presumably, the name JAT, LLC is derived from the initials of Mr. Trent's name.  JAT uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. JAT regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. JAT is a "debt collector" as the term is defined and used in the FDCPA. JAT is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, JAT is a "collection agency" and "licensee" as the terms are defined and used in MOC.

9

22.     During all times pertinent hereto, JAT directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

23.     Defendant Platinum Holdings Group, LLC ("PHG") is an active Nevada limited liability company. PHG uses as its Nevada business address, a private mailbox that is rented from The UPS Store #135, located at 3540 West Sahara Avenue, #E-6, PMB #1310, Las Vegas, Nevada 89102.  The registered agent for PHG is Luis Esteban Vasquez, also known as Steve Vasquez, 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705. The principal business address for PHG purportedly is located at 2414 South Fairview Street, Suite 210, Santa Ana, California 92704-5318. PHG also has claimed to have a principal business address located at 20422 Beach Boulevard, Suite 245, Huntington Beach, California 92648.  PHG uses multiple telephone numbers, including 714-845-3622. According to documents filed by PHG with the State of California and elsewhere, the Managing Members of PHG are defendants Scott Douglas Cass and James Arley Trent . PHG uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. PHG regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. PHG is a "debt collector" as the term is defined and used in the FDCPA. PHG is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, PHG is a "collection agency" and "licensee" as the terms are defined and used in MOC.

24.     PHG is the entity that holds title to the delinquent consumer accounts that are purchased by defendants for collection. PHG is the entity that claimed to have purchased Mr. Gregory's account as described in this complaint.

25.     On February 24, 2015, a UCC Filing Statement (Filing No. 2015004921-9) was filed with the Nevada Secretary of State, UCC Division, naming Platinum Holdings Group, LLC as the debtor and non-party National Credit Adjusters, L.L.C. ("NCA") as the secured party, and giving notice of a purchase money security interest in delinquent consumer accounts allegedly sold by NCA to PHG. I will need to be determined in discovery whether the transaction between NCA and PHG was a true sale, and if not, then NCA will need to be added as a defendant in this lawsuit.

26.     During all times pertinent hereto, PHG directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

27.     Defendants have registered multiple internet domain names to use in connection with their unlawful debt collection scheme. Those internet domain names include the following: www.premiumreceivables.com, www.platinumholdingsllc.com, www.platholdings.com, www.payphg.com, www.wwrecoveries.com, www.wwarllc.com, www.premiumassetsvs.com, www.atlasrecoveries.com, www.coastmitigation.com and www.jamesatrent.com. Defendants registered each internet domain name through non-party Royce F. Hutain Jr. and his company, Fractured Media, Inc., with a purported business address of 3540 West Sahara Avenue, #E-6, Las Vegas, Nevada 89102, which happens to be the same The UPS Store address that is used by defendants for their corporate entities. Moreover, when Mr. Hutain registered one of the internet domain names, he provided a "registrant phone number" of 714-316-2726, which happens to be a telephone number that belongs to defendants. It will need to be determined in discovery whether or not Mr. Hutain is a participant in defendants' unlawful debt collection scheme.

28. Defendant Scott Douglas Cass is a natural person, age 49, purportedly residing at 12725 Doral, Tustin, California 92782-1046. Mr. Cass is an owner, officer, manager, employee and/or agent of Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG. Mr. Cass uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Cass regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another. Mr. Cass is a "debt collector" as the term is defined and used in the FDCPA. Mr. Cass is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Cass is a "collection agency" and "licensee" as the terms are defined and used in MOC.

29. During all times pertinent hereto, Mr. Cass (a) created the collection policies and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, (c) oversaw the application of the collection policies and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to collect an alleged debt from Mr. Gregory as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f)

had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents in to collect an alleged debt from Mr. Gregory as alleged in this complaint.

30.     During all times pertinent hereto, Mr. Cass directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

31.     Mr. Cass is owner, director, officer, manager and employee of non-party Cass Consulting Group, an active Nevada corporation. It will need to be determined in discovery whether or not Cass Consulting Group participated in the unlawful debt collection practices that are described in this complaint.

32.     Defendant James Arley Trent is a natural person, age 51, purportedly residing at 3235 Moritz Drive, Huntington Beach, California 92649-1876.  Mr. Trent is an owner, officer, manager, employee and/or agent of Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG. Mr. Trent uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Trent regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Trent is a "debt collector" as the term is defined and used in the FDCPA.  Mr. Trent is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Mr. Trent is a "collection agency" and "licensee" as the terms are defined and used in MOC.

33.     During all times pertinent hereto, Mr. Trent (a) created the collection policies and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents, in connection with their common efforts to collect

13

consumer debts, (b) managed or otherwise controlled the daily collection operations of Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, (c) oversaw the application of the collection policies and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to collect an alleged debt from Mr. Gregory as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents in to collect an alleged debt from Mr. Gregory as alleged in this complaint.

34.     During all times pertinent hereto, Mr. Trent directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

35.     Defendant Devin Christian Molina is a natural person, age 53, purportedly residing at 2791 Bunting Circle, Costa Mesa, California 92626-4744.  Mr. Molina is an owner, officer, manager, employee and/or agent of Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG. Mr. Molina uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Mr. Molina regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Mr.

Molina is a "debt collector" as the term is defined and used in the FDCPA. Mr. Molina is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Molina is a "collection agency" and "licensee" as the terms are defined and used in MOC.

36. During all times pertinent hereto, Mr. Molina (a) created the collection policies and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, (c) oversaw the application of the collection policies and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to collect an alleged debt from Mr. Gregory as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents in to collect an alleged debt from Mr. Gregory as alleged in this complaint.

37. During all times pertinent hereto, Mr. Molina directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

38.     Defendant Danielle Marie Revis, also known as Danielle Marie Collaso, also known as Danielle Gardner Revise, is a natural person, age 47, purportedly residing at 168 Terraza Court, Costa Mesa, California 92627-5168.  Ms. Revis is an owner, officer, manager, employee and/or agent of Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG. Ms. Revis uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Ms. Revis regularly collects or attempts to collect, directly and/or indirectly, debts owed or due or asserted to be owed or due another.  Ms. Revis is a "debt collector" as the term is defined and used in the FDCPA.  Ms. Revis is a "regulated person" as the term is defined and used in the MRCPA.  Alternatively, Ms. Revis is a "collection agency" and "licensee" as the terms are defined and used in MOC.

39.     Ms. Revis maintains a profile on the internet website, www.linkedin.com, where she states that has been employed by the Platinum Holdings Group, LLC since December of 2010, and that she is the company's Vice President of Human Resources and Compliance. Ms. Revis also touts: "While my training background encompasses a multitude of various industries, FINANCIAL COLLECTIONS is my foundation and the industry I have worked in for over 20 years. I specialize in all facets of the industry including governing regulations, i.e. FDCPA, GLBA, FCRA, etc. and certification."

40.     Ms. Revis is a convicted felon. On July, 2007, Ms. Revis entered into a plea agreement in the matter of *United States of America v. Danielle Collaso*, U.S. District Court, Central District of California, Case No. 5:07-cr-00104-SGL-1, admitting that while employed by a collection agency, Ms. Revis wrongfully accessed an online database named Accurint, obtained the names, social security numbers, dates of birth, addresses and other personal data regarding

multiple persons, used her home computer and the stolen information to steal the persons' credit identities and fraudulently obtain multiple credit cards in her victims' names, and then used the credit cards to steal goods and services from various merchants. Similarly, on May 19, 2009, Ms. Revis entered a guilty plea for Second Degree Burglary and writing NSF checks in the matter of the *State of California v. Danielle Marie Collaso*, Orange County Superior Court, Case No. 08NF2067. The very next year, defendants hired Ms. Revis, made her a Vice President of their companies, and gave her the responsibility of overseeing defendants' human resources as well as defendants' compliance with the FDCPA, Fair Credit Reporting Act, and other consumer protection laws.

41.     The Better Business Bureau for Orange County, California, on a scale of A+ to F, gives Premium Receivables, LLC and Premium Asset Services LLC a rating of "F." Many of the fifty consumer complaints that can be read on the BBB website describe the same unlawful debt collection practices that are described in this lawsuit. Responses to the consumer complaints that are filed with the BBB are signed by Ms. Revis in her capacity as "Chief Compliance Officer, Premier Receivables, LLC, a Platinum Holdings Group LLC Company." Ms. Revis maintains an email address of drevis@platinumholdingsllc.com.  Ms. Revis has represented to the BBB multiple times that defendants record their telephone calls to consumers, including their conversations with consumers.

42.     During all times pertinent hereto, Ms. Revis (a) created the collection policies and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, (c) oversaw the application

17

of the collection policies and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG and their employees and agents to collect debts from consumers, including the tactics and scripts that were used to collect an alleged debt from Mr. Gregory as alleged in this complaint, (e) ratified the unlawful debt collection practices and procedures used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG, and their employees and agents in to collect an alleged debt from Mr. Gregory as alleged in this complaint.

43.     During all times pertinent hereto, Ms. Revis directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Mr. Gregory that are described in this complaint.

44.     Non-party Luis E. Vasquez, also known as Luis Esteban Vasquez, also known as Steve Vasquez, is a natural person, age 53, purportedly residing in Orange County, California. Mr. Vasquez was admitted (Bar # 162798) to the State Bar of California on December 14, 1992. Mr. Vasquez's license to practice law was suspended on August 29, 1994, reinstated on April 25, 1995, suspended again on August 12, 1996, reinstated again on June 6, 2005, suspended again on May 22, 2013, reinstated again on January 30, 2014, suspended again on July 28, 2014, and reinstated again on October 2, 2014.  The State Bar of California internet website contains the following information: "May 22, 2013 - LUIS ESTEBAN VASQUEZ [#162798], 51, of Santa Ana, was suspended for one year, stayed, placed on two years' probation with an actual 90-day

18

suspension and ordered to take the MPRE and comply with rule 9.20 of the California Rules of Court. The order took effect May 22, 2013. Vasquez stipulated to two counts of misconduct in one client matter, failing to perform legal services with competence and failing to respond to client inquiries. Vasquez was hired to represent a client in connection with an IRS audit and to negotiate better terms of a judgment issued against him by an insurance company. Vasquez failed to respond to messages left by the client about forwarding documentation to the IRS, leading the agency to close his case and assess a $100,000 penalty against his business. He also did not communicate the terms of the insurance company judgment to the client and failed to respond to repeated requests for a status update. Vasquez was publicly reproved in 2011 for failure to perform, failure to promptly release client papers and materials, failure to return an unearned fee, failure to respond to client inquiries and failure to cooperate with the State Bar in a disciplinary investigation. The discipline arose out of Vasquez's representation of a client in a bankruptcy proceeding." Mr. Vasquez supposedly maintains his law practice at 1820 East Garry Avenue, Suite 107, Santa Ana, California 92705.  Mr. Vasquez participated in creating and registering Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR, Coast, JAT and PHG. Mr. Vasquez serves as registered agent for each of those entities. Mr. Vasquez also created, registered, and served as registered agent for Shekinah, Inc.  It will need to be determined in discovery whether and to what extent Mr. Vasquez has participated in the unlawful debt collection practices that are described in this complaint.

45.     The defendants are intricately bound together and combine their efforts in concerted attempts to collect debts allegedly owed by consumers throughout the United States.

46.     Although each corporate entity is registered as an independent entity, defendants share the same telephone numbers, office space, equipment, staff, management and tactics.

47.     Defendants operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each defendant jointly and severally

48.     Prior to forming Premium, Platinum, Worldwide, PAS, Atlas, CCS, PAR and PHG, Mr. Cass, Mr. Trent, Mr. Vasquez and others (including Mr. Trent's wife, Cecilia Trent), operated the same unlawful debt collection scheme under the name of Shekinah, Inc., a Nevada corporation. The word "Shekinah" is of Hebrew origin and is often translated to mean "God's manifested glory" or "God's presence."

49.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf.  *See, e.g., Pollice v. Nat'l Tax Funding, L.P.,* 225 F.3d 379, 404 (3rd Cir. 2000).

50.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

51.    Plaintiff Anthony Gregory had a credit account (No. 6000431412) with Sterling Jewelers Inc., doing business as Kay Jewelers, which he used to purchase goods or services for personal, family and household purposes. Any resulting obligation of Mr. Gregory to pay money to Kay Jewelers was a "debt" as the term is defined and used in the FDCPA. MCPA and MOC.

52.    Mr. Gregory became unable to pay his alleged debt to Kay Jewelers and the account went into default.

53.    It has been more than six years since Mr. Gregory paid any money to Kay Jewelers or any other entity in connection with the account.

54.    It has been more than six years since Mr. Gregory's account went into default.

55.    Mr. Gregory's account with Kay Jewelers is no longer judicially enforceable by operation of the applicable statute of limitation. State differently, the account and related, alleged debt are time-barred.

56.    In September of 2013, Kay Jewelers sold Mr. Gregory's delinquent and charged-off account to an entity named National Credit Adjusters, L.L.C. ("NCA").

57.    When Kay Jewelers sold Mr. Gregory's delinquent and charged-off account to NCA in September of 2013, the account had an alleged unpaid balance of $922.61.

58.    In April of 2015, NCA sold Mr. Gregory's delinquent and charged-off account to defendant Platinum Holdings Group, LLC.

59.    In late May or early June of 2015, defendants in their efforts to collect money from Mr. Gregory placed multiple telephone calls to cellular telephones belonging to Mr. Gregory and to Mr. Gregory's wife.  Many of the telephone calls originated from the following

telephone numbers: 714-477-6280, 714-477-6284, 714-477-6286, 714-477-6287, 714-477-6289 and 714-922-9473.

60.    Multiple times, defendants' employees and agents left recorded messages on the voice mail belonging to Mr. Gregory and Mrs. Gregory, demanding that Mr. Gregory return the call, but without stating the name of the company that was calling, without stating that the caller was a debt collector, and without stating that the call was made in connection with efforts to collect a debt.

61.    By June 4, 2015, defendants and their employees and agents were making up to six calls per day to the cellular telephones belonging to Mr. Gregory and Mrs. Gregory.

62.     On June 5, 2015, defendants and their employees and agents made at least four telephone calls to Mr. Gregory's cellular telephone and at least three telephone calls to Mrs. Gregory's cellular telephone.

63.    On June 5, 2015, Mr. Gregory spoke by telephone with defendants' employee and agent named Glenn Strickland.  In the ensuing conversation, defendants' employee and agent made the following representations to Mr. Gregory:

a)    Premier Receivables, LLC was attempting to collect a debt owed by Mr. Gregory in connection with an account Mr. Gregory had with Kay Jewelers.

b)    Mr. Gregory currently owed a balance on the account in the amount of $2,153.66.

c)    If Mr. Gregory did not agree that day to pay the debt in full, with minimum payments of at least $216.00 per month, then a lawsuit would be filed

against Mr. Gregory to collect the full amount.

d)     Mr. Gregory stated that he would need to confer with his wife before

agreeing to any payment arrangement.

64.     On June 5, 2015, Mr. Gregory's wife, Sarah Gregory, spoke by telephone with

defendants' employee and agent named Glenn Strickland.  In the ensuing conversation,

defendants' employee and agent made the following representations to Mrs. Gregory:

a)     Premier Receivables, LLC was attempting to collect a debt owed by Mr.

Gregory in connection with an account Mr. Gregory had with Kay

Jewelers.

b)     Mr. Gregory currently owed a balance on the account in the amount of

$2,153.66.

c)     If Mr. Gregory did not agree that day to pay the debt in full, with minimum

payments of at least $216.00 per month, then a lawsuit would be filed

against Mr. Gregory to collect the full amount.

Mrs. Gregory stated that according to Mr. Gregory's credit reports, when Kay Jewelers sold Mr.

Gregory's delinquent and charged-off account to NCA in September of 2013, the account had an

alleged unpaid balance of only $922.61. Defendants' employee and agent stated that since

September of 2013 (a span of approximately twenty months), Mr. Gregory's unpaid balance of

$922.61 had accrued interest in the amount of $1,231.05, resulting in a current balance of

$2,153.66.  Mrs. Gregory stated that she needed to confer with Mr. Gregory regarding any

payment arrangement.

65.     On June 5, 2015, Mr. Gregory again spoke by telephone with defendants'

23

employee and agent named Glenn Strickland.  Mr. Gregory stated that he was concerned about

agreeing to pay money to defendants because he had received nothing in writing from

defendants. Mr. Gregory stated that he would not agree to pay anything to defendants until he

received something in writing from defendants by mail and verifying the debt. Defendants'

employee and agent stated that defendants could not provide anything in writing to Mr. Gregory

unless Mr. Gregory first agreed by telephone to the terms of payment.

66.     On June 5, 2015, Mr. Gregory received an email from a person named Katie

Trent at Premium Receivables, LLC, with an email address of ktrent@premiumassetsvs.com.

Attached to the email was a "Payment Arrangement Letter" from Glenn Strickland, Collection

Manager, with Premium Receivables, LLC, as well as a "Payment Authorization Form." The

Payment Arrangement Letter called for Mr. Gregory to make an initial payment to defendants on

June 30, 2015. The email and attachments are the only written documents ever sent by

defendants to Mr. Gregory. A copy of the email, letter and form are attached hereto as Exhibit A.

67.     On June 29, 2015, Mr. Gregory placed a telephone call to defendants and spoke

by telephone with defendants' Collection Manager, Glenn Strickland. Mr. Gregory stated that he

would not be making any payment to defendants because defendants had failed to mail any

verification of the debt to Mr. Gregory.

68.     On June 30, 2015, Mr. Gregory placed a telephone call to defendants and spoke

by telephone with defendants' employee and agent, identified as "Shawn." Mr. Gregory stated

that he would not be making any payment to defendants because defendants had failed to mail

any verification of the debt to Mr. Gregory, because Mr. Gregory did not believe defendants to be

a legitimate collection agency, and because Mr. Gregory did not trust defendants. At that point in

time, Mr. Strickland, who had been silently monitoring the conversation, began to shout, accusing Mr. Gregory of speaking "gibberish," stating that a lawsuit would be filed against Mr. Gregory if he did not pay money to defendants by July 31, 2015, and that defendants were hiring a private investigator to hunt down Mr. Gregory and serve him with a lawsuit.

69.     On July 31, 2015, defendants placed a telephone call to Mr. Gregory's cellular telephone. Mr. Gregory did not answer the call. Defendants did not leave a message.

70.     On August 27, 2015 at approximately 3:38 p.m., defendants placed a call to Mr. Gregory's cellular telephone. In the ensuing conversation, defendants' employee and agent demanded payment of the alleged debt. Mr. Gregory stated that he would not pay any money to defendants unless defendants mailed verification of the alleged debt to Mr. Gregory. Defendants' employee and agent agreed to mail the requested verification of the alleged debt to Mr. Gregory. The call originated from telephone number 855-225-4156.

71.     On August 27, 2015 at approximately 4:32 p.m., defendants placed a call to Mrs. Gregory's cellular telephone. In the ensuing conversation, defendants' employee and agent stated to Mrs. Gregory that defendants had decided not to mail any documentation to verify the debt to Mr. Gregory and that defendants instead were filing a lawsuit against Mr. Gregory. The call originated from telephone number 855-225-4156.

72.     Telephone calls made to telephone number 855-225-4156 are answered by defendants' employees and agents with the words "Premium Asset Services."

73.     The above-described threats and representations made by defendants' employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers

25

through the use of false threats, intimidation, criminal extortion, and unlawful harassment of the consumers and their relatives and other third parties.  Discovery is expected to disclose that defendants have coerced the payment of hundreds of thousands of dollars from thousands of consumers using the same unlawful tactics that are described in this complaint.

74.     Defendants and their employees and agents in the described communications failed to meaningfully identify themselves and the their companies.

75.     Defendants and their employees and agents in the described communications falsely represented to Mr. Gregory the amount of the alleged debt.

76.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Gregory that a lawsuit would be filed against Mr. Gregory to collect the alleged debt.

77.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Gregory that a lawsuit would be filed against Mr. Gregory to collect the alleged debt that is time-barred.

78.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Gregory that Premium Receivables, LLC was causing derogatory information regarding the alleged debt to appear on Mr. Gregory's credit history.

79.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Gregory that if Mr. Gregory paid money to defendants, then Premium Receivables, LLC's "trade line with all major credit reporting bureaus will be updated accordingly."

80.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Gregory that defendants retain lawyers to collect debts in Michigan.

81.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Gregory that defendants intended to retain lawyers to collect the alleged debt from Mr. Gregory.

82.     Defendants and their employees and agents in the described communications falsely represented and falsely implied to Mr. Gregory that Mr. Gregory was going to be served with a summons and complaint.

83.     Defendants did not intend to file a lawsuit against Mr. Gregory in any Michigan court in efforts to collect the alleged debt.

84.     No defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

85.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

86.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

87.     The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

88.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. §

27

1692e(2)(A).

89.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

90.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

91.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

92.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

93.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

94.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

95.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

96.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business,

28

company, or organization.  15 U.S.C. § 1692e(14).

97.    The FDCPA states that it is unlawful for a debt collector to use unfair or
unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

98.    The FDCPA states that it is unlawful for a debt collector to collect any amount
unless such amount is expressly authorized by the agreement creating the debt or permitted by
law.  15 U.S.C. § 1692f(1).

99.    Defendants and their employees and/or agents have violated the FDCPA, 15
U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (5), (8), (10), (11), (13) and
(14), and 1692f and 169f(1).

100.    The FDCPA requires that, within five days of the initial communication with a
consumer in connection with the collection of any debt, a debt collector shall, unless the required
information is contained in the initial communication or the consumer has paid the debt, send the
consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

101.    Defendants failed to provide Mr. Gregory with the information it was required
to provide by the FDCPA, 15 U.S.C. § 1692g(a) and thereby violated the FDCPA.

102.    Defendants and their employees, managers, owners, agents, attorneys, affiliates
and co-conspirators, yet to be identified in discovery, are engaged in an ongoing scheme, through
which they directly and indirectly conspire to purchase and collect delinquent loans, by using the
above-described debt collection practices, in violation of the FDCPA (and various state laws,
including Michigan law), and that include the use of scripted threats of faked litigation and that
include demands for payments in amounts that exceeded the amount expressly authorized by the
agreement creating the debt or permitted by law.  Defendants and their employees, managers,

owners, agents, attorneys, affiliates and co-conspirators, have used the same script and same unlawful, criminal tactics, to collect or attempt to collect money from more than one thousand persons.  The enterprise remains active and ongoing.

102.    Each defendant and each defendant's employees, managers, owners, agents, attorneys, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

103.    Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

104.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

105.    Defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

106.    Defendants used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to make the above-described calls to the cellular telephones belonging to Mr. Gregory and Mrs. Gregory.

107.    None of the above-described calls made by defendants to Mr. Gregory and Mrs.

Gregory was made for "emergency purposes" as the phrase is used in the TCPA, 47 U.S.C. § 227(b)(1)(A).

108.    Defendants did not obtain Mr. Gregory's or Mrs. Gregory's "prior express consent" as the phrase is used in the TCPA, 47 U.S.C. § 227(b)(1)(A) to make the above-described calls to Mr. Gregory or Mrs. Gregory.

109.    Defendants did not have an "established business relationship" with Mr. Gregory or Mrs. Gregory within the meaning of 47 U.S.C. § 227(a)(4) when defendants made the above-described calls to Mr. Gregory and Mrs. Gregory.

110.    No defendants is a "tax exempt nonprofit organization" within the meaning of 47 U.S.C. § 227(a)(4).

111.    Mr. Gregory is a "person" as the term is defined and used in the TCPA.

112.    Mrs. Gregory is a "person" as the term is defined and used in the TCPA.

113.    Defendants have violated the TCPA.

114.    As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, attorneys, affiliates and co-conspirators, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

V.    **Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

115.    Plaintiff incorporates the foregoing paragraphs by reference.

116.    Each defendant has violated the FDCPA.  Each defendant's violations of the

FDCPA include, but are not necessarily limited to, the following:

a)   Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)   Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)   Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)   Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)   Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)   Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)   Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)   Such further relief as the court deems just and proper.

### Count 2– Michigan Regulation of Collection Practices Act

117.   Plaintiff incorporates the foregoing paragraphs by reference.

118.   Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)   Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)   Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading,

untrue, or deceptive statement or claim in a communication to collect a debt;

c)      Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)      Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)      Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)      Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 445.257(2);

b)      Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)      Statutory damages pursuant to M.C.L. § 445.257(2);

d)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)      Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 3 – Michigan Occupational Code

119.    Plaintiff incorporates the foregoing paragraphs by reference.

120.    Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)    Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)    Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)    Defendants violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)    Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or abusive method to collect a debt;

g)    Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee; and

h)    Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)    Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Count 4 – Telephone Consumer Protection Act

121.    Plaintiff incorporates the foregoing paragraphs by reference.

122.    Each defendant has violated the TCPA.  Defendants' violations of the TCPA include, but are not necessarily limited to, the following:

a)      Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages or $500.00 for each violation, whichever is greater, pursuant to 47 U.S.C. § 227(b)(3)(B);

b)      Treble actual damages or $1,500.00 for each violation, whichever is greater, pursuant to 47 U.S.C. § 227(b)(3)(C);

c)      Costs; and

d)      Such further relief as the court deems just and proper.

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: September 23, 2015                    /s/ Phillip C. Rogers
                                             Phillip C. Rogers (P34356)
                                             Attorney for Plaintiff
                                             40 Pearl Street, N.W., Suite 336
                                             Grand Rapids, Michigan 49503-3026
                                             (616) 776-1176
                                             ConsumerLawyer@aol.com

35